**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG DIVISION**

**BERT V.E. PARKER,**

    **Plaintiff,**

**v.**                                            **Civil Action No. 1:10-cv-120
(Judge Keeley)**

**GEORGE TRENT ET AL.,**

    **Defendant.**

**REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE
RECOMMENDING THAT THE DISTRICT COURT GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [103]**

**I.    INTRODUCTION**

On August 2, 2010, *pro se* Plaintiff Bert V.E. Parker ("Plaintiff") filed a Complaint initiating this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1 ("Complaint").) In the Complaint, Plaintiff seeks relief against Administrator George Trent ("Trent"), Director Donna Kuroski ("Kuroski"), Officer Dee Wayne ("Wayne"), and Medical Administrator Ashley Ginanni. (*Id.*) On September 21, 2010, Defendants filed an Answer to the Complaint. (Answer, ECF No. 18.) Defendants Trent, Kuroski, and Wayne filed an Amended Answer on December 23, 2010. (Amended Answer, ECF No. 47.)

On June 2, 2011, Defendants Trent, Kuroski, and Wayne filed a Motion for Summary Judgment. (ECF No. 103.) On June 8, 2011, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of his right to file a response and that a failure to respond could result in the entry of a dismissal order against him. (ECF No. 106.) Plaintiff filed a Memorandum of Law in Objection and Opposition to Defendants' Motion for Summary Judgment ("Response") on July 11, 2011. (ECF No. 113.) Defendants replied on July

19, 2011. (ECF No. 114.) Plaintiff filed a Response to Defendants' Reply and Motion for Summary Judgment on August 8, 2011 (ECF No. 116), and Defendants filed a motion to strike this filing on August 10, 2011 (ECF No. 117). By Order dated December 12, 2011, the undersigned Magistrate Judge granted Defendants' motion and ordered Plaintiff's filing dated August 8, 2011 (ECF No. 116) to be stricken from the Court's docket. This case is now before the undersigned for a Report and Recommendation on Defendants' Motion for Summary Judgment.

## II. CONTENTIONS OF THE PARTIES

*A.     The Complaint*

In his Complaint, Plaintiff alleges that Defendants have violated his First Amendment right of free exercise of religion by preventing him from observing Ramadan as mandated by the Qur'an. (Complaint at 15.)[1] Specifically, Plaintiff states that Defendant Trent has, for two consecutive Ramadans, "deliberately set an improper eating and praying time of 6:00 am, and then set another improper eating time of 5:50 am even though day break prayer (Fajr al salat) is the proper time." (*Id.* at 15.) He also argues that Defendants Kuroski and Wayne used their positions to deliberately carry out Defendant Trent's decisions and to deliberately prevent Plaintiff from correctly observing Ramadan. (*Id.* at 16.) Finally, he asserts that Defendant Ginanni violated his rights by not ensuring that Plaintiff was fit to participate in Ramadan and by not ensuring that his medication was provided before daybreak. (*Id.* at 12-13, 16.)

Overall, Plaintiff alleges that Defendants deliberately denied his multiple requests and grievances regarding the observation of Ramadan. (*Id.* at 6-13.) He alleges that Defendants

---

[1] The Court utilizes the page numbering of the document filed using CM/ECF when referring to Plaintiff's Complaint.

deliberately scheduled breakfast during Ramadan to occur at daybreak and past prayer time and that they deliberately did not allow Plaintiff to pray together with other Muslims. (*Id.*) As relief, Plaintiff asks the Court for, *inter alia*, a jury trial, a declaratory judgment, a preliminary and permanent injunction, and an order that Defendants comply with the First Amendment of the United States Constitution. (*Id.* at 18-19.)

## B.  *Defendants' Motion for Summary Judgment*

Defendants allege that they are entitled to summary judgment because insufficient evidence exists to demonstrate that Plaintiff's First Amendment rights were violated. (Mem. in Supp. of Mot. for Summ. J. ("Mem."), ECF No. 104 at 8.) Specifically, Defendants assert that there is no evidence that they intentionally violated Plaintiff's rights under the Free Exercise Clause of the First Amendment by failing to serve breakfast prior to dawn because Defendants were acting based on the instructions given by the West Virginia Regional Jail Authority ("Authority") and the Administrators Religious Manual ("Manual"). (*Id.* at 10-11.) Furthermore, Defendants state that they did not violate Plaintiff's constitutional rights by refusing to allow Muslim inmates to pray together because Plaintiff never found an Imam to perform the service, because the North Central Regional Jail ("NCRJ") has a legitimate interest in maintaining security and preventing inmates of different classifications from meeting together without supervision, and because Plaintiff was still able to practice his religion every morning in his cell. (*Id.* at 11-13.) Finally, Defendants allege that none of them failed to provide Plaintiff's medication before he began his fast. (*Id.* at 14.)

Defendants also allege that they are entitled to qualified immunity because there is no evidence that they intentionally denied Plaintiff his religiously mandated diet, failed to give him his medication prior to the fasting period, and arbitrarily refused to allow him to pray together with

other Muslim inmates. (*Id.*) Furthermore, Defendants argue that Plaintiff's claims for declaratory and injunctive relief are now moot because Plaintiff was transferred to another facility from the NCRJ on November 25, 2009. (*Id.* at 16.)

## C. *Plaintiff's Response*

In his Response to Defendants' motion, Plaintiff asserts that Defendants deliberately followed policies set in 2006 and 2007 regarding Ramadan and that they should have contacted Mr. Mann, the Community Outreach Coordinator, after Plaintiff filed his first request regarding breakfast times. (Mem. of Law. in Obj. and Opp. To Defs.' Mot. for Summ. J. ("Resp."), ECF No. 113 at 13-15.) Furthermore, Plaintiff alleges that Defendants deliberately deviated from policy by not allowing Muslim inmates to pray together and that there is no evidence of whether allowing Muslim inmates to pray together would constitute a security risk. (*Id.* at 16.) Plaintiff argues that Defendants did not have a medication plan in place and therefore intentionally denied Plaintiff his religiously mandated diet. (*Id.* at 17.) Finally, Plaintiff asserts that Defendants are not entitled to qualified immunity and that he is entitled to declaratory and injunctive relief. (*Id.* at 17-18.)

## D. *Defendants' Reply*

In their Reply, Defendants again assert that there is no evidence that they intentionally violated Plaintiff's constitutional rights and that Plaintiff "makes arguments that only show potentially negligent conduct by Defendants." (Defs.' Reply to Pl.'s Resp. to Their Mot. for Summ. J. ("Reply"), ECF No. 114 at 1-2.) Instead, Defendants argue, they made a good faith effort to accommodate Plaintiff's religious practices. (*Id.* at 4.) Furthermore, Defendants allege that failure to provide Plaintiff's medication before dawn was nothing more than a misunderstanding, and that they did not intentionally violate Plaintiff's rights because there is no evidence that they were the

ones that failed to provide his medication prior to daybreak. (*Id.* at 6-7.) Finally, Defendants assert that Plaintiff has not produced sufficient evidence to overcome the NCRJ's legitimate interest in preventing Muslim inmates of different classifications to pray together during Ramadan without supervision. (*Id.* at 7-10.)

### III. STANDARD OF REVIEW

A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Fed. Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir. 1990). In applying the standard for summary judgment, a court must review all the evidence "in the light most favorable to the nonmoving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In *Celotex*, the Supreme Court held that the moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. *Celotex*, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing

that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. *Id.* at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. *Anderson*, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 587 (citation omitted).

## IV. ANALYSIS

### A. *Plaintiff's Claims for Declaratory and Injunctive Relief Are Moot*

As noted above, Plaintiff is seeking relief in the form of, *inter alia*, a declaratory judgment and a preliminary and permanent injunction. (Complaint at 18.) However, Defendants assert that Plaintiff's claims for injunctive and declaratory relief are moot because of Plaintiff's transfer to another facility. (Mem. at 16.) On November 25, 2009, Plaintiff was transferred from the NCRJ to the Mount Olive Correctional Center. (*Id.*, Ex. 4.) A prisoner's transfer to another facility renders a claim for injunctive and declaratory relief moot. *See, e.g., Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987); *Taylors v. Rogers*, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986). Therefore, because Plaintiff is no longer at the NCRJ, his claims for declaratory and injunctive relief are now moot. However, Plaintiff also seeks monetary damages. (Complaint at 19.) Therefore, his entire case is not moot. *See Williams*, 952 F.2d at 823.

B.  *Defendants Did Not Intentionally Violate Plaintiff's First Amendment Rights by Failing to Serve His Breakfast Prior to Dawn*

In his Complaint, Plaintiff alleges that his First Amendment rights of free exercise of religion were violated when Defendants "set an improper eating and prayer time that was in accord with sunrise and not in accord with Ramadan Fasting requirements." (Complaint at 6.) Specifically, Plaintiff argues that Defendants should have set a breakfast time in accordance with the Holy Qur'an, which provides that during Ramadan, Muslims may eat "'until the white thread of dawn appear to you distinct from its black thread.'" (*Id.* at 15.) Defendants allege that Plaintiff's rights were not violated because they did not intentionally interfere with Plaintiff's rights. (Mem. at 10.) Furthermore, Defendants allege that even if their understanding of the requirements of Ramadan was incorrect, this understanding is negligent conduct that does not rise to the level of intentional conduct required to show a violation of the First Amendment. (*Id.* at 10-11.) The undersigned finds that Defendants are entitled to summary judgment on this claim.

Prisoners retain their constitutional rights to freedom of religion pursuant to the First Amendment, and prisoners must be given "reasonable" opportunities to practice their religion. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). Only intentional conduct is actionable under the Free Exercise Clause of the First Amendment. *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006). Even though incarcerated, a prisoner has a "'clearly established right . . . to a diet consistent with his . . . religious scruples,' including proper food during Ramadan." *Id.* at 199 (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)). As such, prison officials violate "this clearly establish right if [they] intentionally and without sufficient justification den[y] an inmate his religiously mandated diet." *Id.* (alterations in original). "[N]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause;" instead, prisoners must assert "conscious or

intentional interference" with their rights. *Id.*; *see also Lovelace v. Bassett*, No. 7:07CV00506, 2009 WL 3157367, at *9 (W.D. Va. Sept. 29, 2009) (noting that "[n]egligent conduct by individual prison officials that substantially burdens inmates' religious exercise is not actionable under . . . the Free Exercise Clause against officials in their individual capacities").

Here, the evidence demonstrates that Defendants did not intentionally violate Plaintiff's First Amendment rights by failing to serve him breakfast prior to dawn. Defendants Trent, Kuroski, and Wayne believed they would be fulfilling the requirements of Ramadan if Plaintiff were served his breakfast prior to sunrise. (Mem., Ex. 2 ("Trent Aff.") at 1; Ex. 7 ("Kuroski Aff.") at 1; Ex. 8 ("Wayne Aff.") at 1.) Officials at the NCRJ had served breakfast prior to sunrise during Ramadans prior to Plaintiff's incarceration there, and no inmates had ever complained about this practice. (Trent Aff. at 1; Kuroski Aff. at 1; Wayne Aff. at 1.) Furthermore, the evidence indicates that Defendants made a good faith effort to accommodate Plaintiff's religious practices. On August 31, 2009, Defendant Trent made the decision to move the breakfast time "for inmates observing Ramadan to 5:30 a.m. in an effort to address Plaintiff's requests." (Trent Aff. at 2; *see also* Mem., Ex. 10.) This effort by Defendant Trent to accommodate Plaintiff's request for an earlier eating time belies Plaintiff's assertion that Defendants intentionally violated his First Amendment rights. *See Lee*, 472 F.3d at 201.

Furthermore, the evidence shows that Defendants were following the policy set by the Authority regarding when breakfast is to be served to Muslim inmates observing Ramadan. Defendants asserted that in the past, officials at the NCRJ have received emails from Mr. Randy Mann, Community Outreach Coordinator for the Authority and the person responsible for addressing religious issues regarding inmates' observance of Ramadan. (Trent Aff. at 1; Kuroski Aff. at 1;

Wayne Aff. at 1.) Mr. Mann's emails, sent in 2006 and 2007, directed that breakfast for those observing Ramadan needed to be served prior to sunrise. (Trent Aff. at 1; Kuroski Aff. at 1; Wayne Aff. at 1; *see also* Mem., Ex. 9 ("Mann Email").) Therefore, in following the instructions provided by the Authority through Mr. Mann, Defendants believed that they were meeting the requirements of Ramadan. In his Response, Plaintiff argues that Defendants should have contacted Mr. Mann in 2008 and 2009 after he submitted grievances regarding the time set for breakfast. (Resp. at 14.) However, Defendants assert that they received no contrary instructions from Mr. Mann for the 2008 and 2009 Ramadan celebrations (Reply at 3), and contacting Mr. Mann after receiving Plaintiff's grievances would have been futile because Mr. Mann had already provided instructions regarding when breakfast was to be served.

Defendants were also following instructions set forth in the Manual provided by the Authority. The Manual provides that during Ramadan, Muslims abstain from food and drink "from sunrise to sunset." (Mem., Ex. 11.) The Manual then states that a "pre-dawn meal is eaten each morning;" this meal is served "before the sun comes up." (*Id.*) The Manual also provides that "[n]o food is eaten between sunrise and sunset." (*Id.*) The evidence demonstrates that when describing the fasting procedure for Ramadan, the Manual uses the terms "sunrise," "pre-dawn," and "before the sun comes up" interchangeably. By providing Plaintiff with his breakfast before sunrise, Defendants reasonably believed that they were following the directions in the Manual. Therefore, there is no evidence that Defendants intentionally violated Plaintiff's First Amendment rights. *See Lee*, 472 F.3d at 201.

Finally, Plaintiff's apparent argument that Defendants were required to research the requirements of Ramandan once he submitted grievances is incorrect. (*See* Resp. at 14-15.) In

*Bassett*, the district court found that the "defendants had no constitutional duty to advocate for [Lovelace] against an established prison policy." *Bassett*, 2009 WL 3157367, at *8 (alteration in original). The *Bassett* court further determined that the "evidence supports, at most, a finding that unnamed . . . officials acted negligently in researching Ramadan practice and in designing the accommodation policy that . . . institutional employees were required to follow." *Id.* at *9. Here, even if Defendants misunderstood the requirements of Ramadan concerning when breakfast was to be served, they were not the ones responsible for researching and creating policy concerning Ramadan practices. Instead, the evidence demonstrates that Defendants were simply following the Manual and the instructions provided by Mr. Mann. (*See* Manual; *see also* Mann Email.)

In sum, the evidence establishes that Defendants did not intentionally violate Plaintiff's rights by failing to serve his breakfast prior to dawn during Ramadan. *See Lee*, 472 F.3d at 201. Not only did Defendant Trent attempt to accommodate Plaintiff's requests by moving the breakfast time for inmates observing Ramadan to 5:30 a.m., but Defendants believed that they were meeting the requirements of Ramadan based on the instructions they had received from Mr. Mann and the provisions of the Manual. For these reasons, the undersigned recommends that Defendants be granted summary judgment on this claim.

C. *Defendants Did Not Violate Plaintiff's Constitutional Rights By Failing to Provide Him His Medication Prior to Dawn*

In his Complaint, Plaintiff alleges that his First Amendment rights of free exercise of religion were violated when, on two occasions, Defendants did not provide him with his medication. (Complaint at 9, 12.) Defendants allege that Plaintiff's rights were not violated because none of them were the ones who failed to provide the medication and because Defendant Trent took action to correct the situation. (Mem. at 14.) The undersigned finds that Defendants are entitled to

summary judgment on this claim for reasons similar to those previously stated.

The evidence demonstrates that on September 10, 2008, Plaintiff submitted a grievance to Defendant Trent because he was not provided with his medication prior to the morning prayer that begins the fasting period. (Mem., Ex. 14 ("Medication Grievance").) There is no evidence, such as an inmate grievance form, to support Plaintiff's claim that he was not provided his high blood pressure medication before daybreak prayer on September 18, 2009. (*See* Complaint at 12.) In fact, in their Reply, Defendants assert that the NCRJ never received a copy of Plaintiff's September 18, 2009 grievance regarding his medication. (Reply at 6.)

In his Response, Plaintiff asserts that Defendants intentionally violated his rights regarding his medication by following Mr. Mann's instructions and by not having a medication plan in place. (Resp. at 17.) However, as discussed above, Defendants believed that they were meeting the requirements of Ramadan by providing breakfast to those inmates observing Ramadan prior to sunrise. (*See, e.g.,* Trent Aff. at 1; Kuroski Aff. at 1; Wayne Aff. at 1.) Furthermore, in response to Plaintiff's grievance on September 10, 2008, Defendant Trent discussed the situation with a shift supervisor. (*See* Medication Grievance; *see also* Trent Aff. at 2.) Overall, the evidence demonstrates that none of the Defendants were the ones who failed to give Plaintiff his medication prior to daybreak and that Defendant Trent took steps to address the situation; therefore, Defendants did not intentionally violate Plaintiff's First Amendment Rights. Furthermore, Plaintiff has provided no evidence that this occurred again during Ramadan. Therefore, the undersigned recommends that Defendants be granted summary judgment on this claim.

D. *Plaintiff's Constitutional Rights Were Not Violated When Defendants Refused to Allow Muslim Inmates to Pray Together*

In his Complaint, Plaintiff also alleges that his First Amendment rights of free exercise of

religion were violated when Defendants refused to allow Muslim inmates at the NCRJ to pray together to observe Ramadan. (Complaint at 6, 9-10, 12.) Defendants allege that Plaintiff's rights were not violated because this refusal "was reasonably related to a legitimate penalogical [sic] interest." (Mem. at 14.) The undersigned finds that Defendants are entitled to summary judgment on this claim.

Prisoners retain their constitutional rights to freedom of religion pursuant to the First Amendment, and prisoners must be given "reasonable" opportunities to practice their religion. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). "In the First Amendment context . . . a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives on the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). However, when determining whether prison regulations infringe upon constitutional rights, the Supreme Court has directed that these regulations be "judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). These rights "must be evaluated within the context of [prisoners'] incarceration," *Whitehouse v. Johnson*, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *4 (E.D. Va. Nov. 18, 2011), because "courts are ill equipped to deal with the increasingly urgent problems of prison administration," *Procunier v. Martinez*, 416 U.S. 396, 405 (1974). Only intentional conduct by prison administrators is actionable. *See Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006).

Therefore, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Supreme Court has set forth four factors that are relevant to making

a determination of reasonableness. First, a court must find a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id.* (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)). Second, the court must consider whether "there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90. "A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* Fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.* A prisoner has the burden of disproving the validity of the prison regulation at issue. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). Finally, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has noted that a court must give deference to prison administrators' judgment when considering First Amendment challenges. *Sweet v. S.C. Dep't of Corr.*, 529 F.2d 854, 859 (4th Cir. 1975).

Here, Plaintiff has not met his burden of disproving the validity of the NCRJ's regulation preventing inmates of different classifications from meeting together without supervision. *See Overton*, 539 U.S. at 132. As Defendant Trent stated in his affidavit, the NCRJ houses a "variety of different types of inmates" because of "the nature of the Regional Jail system." (Trent Aff. at 2.) Defendant Trent noted that some inmates are convicted felons waiting to be transferred to a state prison while others are defendants charged with misdemeanors who are incarcerated at the NCRJ because of their inability to post bond before trial. (*Id.*) He further stated that inmates of different classifications cannot be placed together without supervision because of the "possibility of violence." (*Id.*) The Fourth Circuit has recognized that "prison safety and security are legitimate penological interests." *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002); *see also Bryan v.*

*Capers*, C/A No. 8:06-cv-2515-GRA-BHH, 2007 WL 2116452, at *5 (D.S.C. July 19, 2007) (finding that "the denial of the plaintiff's request for daily group prayer and access to a bathroom during the hour long weekly group prayer are rationally related to the legitimate penological interest of security"). In fact, Defendant Trent never outright refused to allow Muslim inmates at the NCRJ to pray together. Instead, Defendant Trent informed Plaintiff that he would allow Muslim inmates to pray together if they had an Imam to supervise them. (Trent Aff. at 2; *see also* Mem., Ex. 13.) However, Defendant Trent was "not aware of Plaintiff ever finding an Imam," (Trent Aff. at 2.), and Plaintiff has provided no evidence that he did find an Imam to supervise these services.

In his Response, Plaintiff asserts that the Manual, provided by the Authority, states that Muslim inmates should be permitted to pray together, even if a religious volunteer is not available, if security is not affected. (Resp. at 15; *see also* Resp., Ex. 10 ("Manual") at 6.)[2] However, Plaintiff's reliance on the Manual is misplaced, as correctly recognized by Defendants in their Reply. (*See* Reply at 9-10.) The section of the Manual on which Plaintiff relies provides that Muslim inmates should be permitted to gather together for prayer on Fridays for Juma'ah because Juma'ah is "obligatory." (Manual at 6.) Nothing in the Manual provides that Muslim inmates must be permitted to gather for daily prayer during Ramadan.

Plaintiff also relies on Defendant Wayne and Trent's responses to requests for admission to attempt to demonstrate that Defendants have violated his constitutional rights. (Resp. at 16.) While Defendant Wayne objected to Plaintiff's request that Wayne "admit that [i]nmates of different [c]lassification go to [c]ourt together and, also put into the same interview rooms by the [o]fficers,"

---

[2] The Court utilizes the page numbering of the document filed using CM/ECF when referring to the Manual.

she also admitted "that there are certain circumstances under which inmates of different classifications will be placed in the same space." (Resp., Ex. 13.) Furthermore, Defendant Trent admitted that staff members are allowed to watch over inmates' religious services. (*Id.*) However, nothing in these responses suggests that inmates will be allowed to gather for religious services unsupervised, and Defendant Trent had informed Plaintiff that he would allow the Muslim inmates to gather together if Plaintiff found an Imam to supervise them. (Trent Aff. at 2; *see also* Mem., Ex. 13.) Additionally, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132; *see also Sweet*, 529 F.2d at 859. Plaintiff has not provided any evidence that Defendant Trent's decision to not allow Muslim inmates at the NCRJ to gather together without an Imam to supervise them does not meet a "legitimate penological interest." *See Turner*, 482 U.S. at 90; *see also Bryan*, 2007 WL 2116452, at *5.

Finally, the Court notes that Defendants did not completely deny Plaintiff the right to practice and observe his religious beliefs during Ramadan. "A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Cruz*, 405 U.S. at 322. Instead, the inquiry is "whether the inmate has a reasonable opportunity to exercise religious freedom without fear of penalty." *Scott*, 467 F. Supp. 2d at 576. Here, Plaintiff has provided no evidence that he was prohibited from conducting individual prayers during Ramadan.

In sum, Plaintiff has not met his burden of demonstrating that Defendants' denial of his request for group prayer during Ramadan unless an Imam was found to supervise is rationally

related to the NCRJ's legitimate penological interest in security. *See Overton*, 539 U.S. at 132; *see also Veney*, 293 F.3d at 732. Furthermore, Plaintiff has not shown that he was completely denied the ability to conduct individual prayers and religious exercises during Ramadan. *See O'Lone*, 482 U.S. at 351-52; *Scott*, 467 F. Supp. 2d at 576. For these reasons, the undersigned recommends that Defendants be granted summary judgment on this claim.

### E.     *Defendants Are Entitled to Qualified Immunity*

Defendants assert that for similar reasons, they are entitled to qualified immunity for Plaintiff's claims because they did not intentionally violate a clearly established right. (Mem. at 14.) Plaintiff asserts that Defendants are not entitled to qualified immunity because they "were made well aware that they were violating Plaintiff's religious rights and liberties." (Resp. at 18.) For the reasons below, the undersigned finds that Defendants are entitled to qualified immunity.

The Supreme Court has determined that state officials are entitled to qualified immunity against suits for damages if a reasonable officer in the same situation would not have known that his or her actions violated the plaintiff's clearly established constitutional or statutory rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Fourth Circuit has held that a right is clearly established when the issue has been addressed by the Supreme Court, the appropriate court of appeals, or the highest court of a state. *Wilson v. Lane*, 141 F.3d 111, 114 (4th Cir. 1998) (en banc). Courts must focus on the application of the right "to the particular conduct being challenged." *Collinson v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990). To do this, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As the undersigned has concluded above, Defendants did not violate Plaintiff's First

Amendment rights of free exercise of religion. Accordingly, the undersigned finds that reasonable officials in Defendants' positions would not have known that failing to provide breakfast prior to dawn or denying Plaintiff's request for group prayer without supervision violated clearly established law under the First Amendment. Therefore, the undersigned recommends that Defendants be entitled to qualified immunity.

## V. RECOMMENDATION

For the reasons stated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 103) be **GRANTED** because the evidence does not demonstrate that Defendants intentionally violated Plaintiff's First Amendment rights to free exercise of religion. Furthermore, Defendants are entitled to qualified immunity for all of Plaintiff's claims.

Within **fourteen (14) days** after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. The Court further directs the Clerk of the Court to mail a copy of this Report and Recommendation

to the *pro se* Plaintiff Bert V.E. Parker.

**DATED:** December 21, 2011

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE